IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CAVION RUSSELL                                                                                    PLAINTIFF
ADC #181820

V.                              Case No. 4:25-CV-00433-JM-BBM

DEXTER PAYNE, Director, Arkansas
Department of Corrections, *et al*.                                                DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Moody may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

**I.      INTRODUCTION**

On May 5, 2025, Plaintiff Cavion Russell ("Russell"), a prisoner in the Cummins Unit of the Arkansas Division of Correction ("ADC"), filed a *pro se* Complaint pursuant to 42 U.S.C. § 1983, alleging Defendants—ADC Director Dexter Payne, Sergeant Bass, Warden Gary Musselwhite, and Deputy Warden of Security Robert Pierce—violated his constitutional rights. (Doc. 2). The Court conducted an initial screening of the Complaint

pursuant to the Prison Litigation Reform Act ("PLRA")[1] and noted several deficiencies in Russell's pleading. (Doc. 4). Russell was given leave to file an amended complaint and placed on notice that if he did not file an amended complaint, the Court would proceed to screen his original Complaint. *Id*. at 12–13.

Russell failed to file an amended complaint, and the time to do so has passed. (Doc. 4 at 13). Accordingly, the Court will proceed with screening his Complaint, (Doc. 2). 28 U.S.C. § 1915A(a).

## II. ALLEGATIONS

Russell alleges that the ADC is "actively committing genocide" on Muslims, and, on an unspecified date, he and his cellmate were forced to strip naked and placed in handcuffs.[2] (Doc. 2 at 4). Russell was subsequently pushed up against the wall, physically and verbally assaulted, and Bass told Russell that he would break his jaw. *Id.* Bass also told Russell that he had to go to general population. *Id*.

According to Russell, ADC staff are "known to harm [their] inmates and/or leave them for dead," and nowhere is safe. *Id*. The food is poison to the inmates' bodies, and the showers have black mold. *Id*. And, when placed in isolation, the inmates lack access to the

---

[1] The PLRA requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or a portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b). When making this determination, the Court must accept the truth of the factual allegations contained in the complaint, and it may consider the documents attached to the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

[2] Any capitalization, spelling, or grammatical errors are corrected internally and without brackets.

media or "appropriate legal information." *Id*. Russell further alleges that the ADC is generally very unsafe and inhumane, and it fails to uphold its mission statement. *Id*.

Russell next alleges that he was jumped by three inmates on February 23, 2025, at 3:00 a.m., but he was wrongfully blamed for defending himself against the attack. (Doc. 2 at 4). This resulted in the ADC "taking" Russell's parole hearing. *Id.* On April 22, 2025, Musselwhite refused to offer Russell "safety and protection" by failing to investigate the attack on Russell. *Id*. For all these reasons, Russell refuses to live in general population and is currently assigned to a "rodent[-]infested, fire[-]damaged, mold[-]infested cell" where the ceiling and toilet both leak. *Id.* at 5. Although Russell wrote Payne "about these situations along with a letter of persecution," the ADC staff continue to violate inmates' rights. *Id.*

Russell attaches to the Complaint a "Declaration in Support of an Emergency Temporary Restraining Order Against the Corporation and Staff of ADC." (Doc. 2 at 6). The Declaration is essentially a recitation of the allegations in the body of the Complaint. Russell alleges that he needs an emergency order "on the ADC" and to be released to an "ACC reentry program" where Russell can be safe and "live clean and righteously[.]" *Id.* As for now, Russell stays up at night fighting off rats and roaches, and he must breathe in rodents and feces while dealing with extreme weather conditions. *Id.*

Russell sues Defendants in their official and individual capacities. (Doc. 2 at 2). For relief, he seeks damages, (Doc. 2 at 5), though he also requests a temporary restraining order against the ADC allowing his placement in a reentry program, *id.* at 6.

3

## III.    DISCUSSION

To survive pre-service screening under the PLRA, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[L]abels and conclusions," a "formulaic recitation of the elements of a cause of action," and "naked assertions devoid of further factual enhancement" are insufficient to plead a plausible claim. *Id*. Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). However, "[a] pro se complaint must be liberally construed," and courts "should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (cleaned up; citations omitted); *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (citation omitted).

Liberally construing Russell's Complaint, he first alleges an excessive-force claim. He then raises failure-to-protect, due-process, and conditions-of-confinement claims unrelated to the alleged excessive force. He also brings supervisory-liability and official-capacity claims. As noted in the Court's initial screening order, Russell improperly joins Defendants and claims. Nevertheless, because Russell fail to state any claim for relief, the Court finds it unnecessary to sever claims, *see* Fed. R. Civ. P. 20 & 21, and proceeds with screening all allegations.

### A. Excessive Force

Russell first alleges that he and his cellmate were forced to strip naked and placed in handcuffs on an unspecified date. (Doc. 2 at 4). According to Russell, he was pushed up against the wall, physically and verbally assaulted, and Bass said that he would break Russell's jaw. *Id*. In the "Declaration in Support of Emergency Temporary Restraining Order," Russell reiterates that Bass assaulted him while he and his cellmate were stripped naked and cuffed. *Id.* at 6. The Court construes these allegations as an excessive-force claim.

The Eighth Amendment protects prisoners from "unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To state an excessive-force claim under the Eighth Amendment, a prisoner must prove that the defendants used force "maliciously and sadistically to cause harm" rather than in "a good-faith effort to maintain or restore discipline." *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010); *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017). The relevant factors that must be considered when making this determination are: (1) the objective need for force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the defendant; (4) any efforts by the defendant to temper the severity of the forceful response; and (5) the extent of the plaintiff's injuries. *See Jackson*, 866 F.3d at 974; *Ward v. Smith*, 844 F.3d 717, 721–22 (8th Cir. 2016).

Russell does not explain when his altercation with Bass took place or any of the circumstances surrounding the altercation. Thus, it is impossible to determine whether

Russell was being compliant with orders,[3] whether Bass pushed Russell against the wall to maintain or restore discipline, or whether the "push" was meant to cause harm. Russell failed to expound on these allegations when given the opportunity to do so. Thus, as pleaded, Russell's allegations regarding the undated altercation with Bass fail to state a plausible excessive-force claim.

B.  **Access to the Courts**

Russell next alleges that inmates in isolation lack access to "appropriate legal information." (Doc. 2 at 4). Very liberally construed, this vague statement raises a First Amendment access-to-the-courts claim.

The First Amendment encompasses an inmate's right to access to the courts "to attack their sentences, directly or collaterally" or "challenge the conditions of their confinement." *Lewis v. Casey*, 518 U.S. 343, 355 (1996); *Johnson v. Avery*, 393 U.S. 483, 489–90 (1969). Inmates, however, are not guaranteed the ability to file "everything from shareholder derivative actions to slip-and-fall claims." *Lewis*, 518 U.S. at 355. Moreover, to proceed on an access-to-courts claim, an inmate must allege facts showing that he was "actually injured" in regard to a "nonfrivolous and arguably meritorious underlying legal claim." *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007) (citing *Christopher v. Harbury*, 536 U.S. 403, 413 (2002); *Lewis*, 518 U.S. at 353–55.). In order to show "actual injury," the inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351;

---

[3] Based on Bass's alleged statement that Russell had to "come to general population," it appears that Russell may have been refusing to go to general population when ordered to do so. *See* (Doc. 2 at 4).

6

*see also Klinger v. Dept. of Corr.*, 107 F.3d 609, 617 (8th Cir. 1997). The injury may not be speculative or anticipatory. *See Harbury,* 536 U.S. at 416 (holding the "arguably meritorious" nature of a claim must be "more than hope").

There are several issues with Russell's single "access-to-courts" allegation. First, Russell fails to connect any named Defendant to these allegations. Second, this single allegation lacks any detail regarding what legal information inmates lack access to, whether this ever happened to Russell himself, or whether Russell has been "actually injured" due to the alleged lack of access to legal information. Accordingly, Russell fails to state a plausible access-to-the-courts claim.

### C. Due Process

Russell next alleges that unnamed ADC staff wrote him a disciplinary for defending himself, which resulted in a loss of a parole hearing. (Doc. 2 at 4, 6). To the extent Russell is attempting to raise a due process claim based on the disciplinary proceedings, the claim fails.

A prisoner may maintain a due process challenge to a prison disciplinary proceeding only if he is deemed to have a liberty interest at stake. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). The law is clear, however, that Russell has no liberty interest in the loss of his parole eligibility date. ARK. CODE ANN. § 12-29-201(d); *McKinnon v. Norris*, 366 Ark. 404, 408, 231 S.W.3d 725, 730 (2006). Accordingly, Russell's due process claim fails to state a claim for relief.

### D. Conditions of Confinement

Russell's next set of allegations relate to the conditions at the ADC. (Doc. 2 at 4–6). To state a viable Eighth Amendment claim for inhumane conditions of confinement, a prisoner must allege that: (1) objectively, he suffered a "sufficiently serious" deprivation that denied him "the minimal civilized measure of life's necessities" or posed "a substantial risk of serious harm" to his health or safety; and (2) subjectively, the defendants were deliberately indifferent to the risk of harm caused by the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Additionally, Russell must show he suffered an "injury or adverse health consequence[] as a result of his confinement." *Seltzer-Bey v. Delo*, 66 F.3d 961, 964 (8th Cir. 1995).

Russell asserts that the food is poison; there are rats, roaches, and feces in the cells; there is mold in the shower; the cells are fire damaged; and he is exposed to extreme weather conditions. (Doc. 2 at 4–6). But he does not name any individuals associated with these claims. Russell also fails to allege any injury or adverse health consequence he has suffered as a result of these conditions. And he does not explain how long he was exposed to any particular condition. *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) ("the length of time a prisoner is subjected to harsh conditions is a critical factor" in a conditions-of-confinement claim). Accordingly, Russell fails to state a plausible conditions-of-confinement claim under the Eighth Amendment.

### E. Failure to Protect

Russell complains that, in the early morning hours of February 23, 2025, he was "jumped by 3 people." (Doc. 2 at 4). Although prison officials must "take reasonable

measures to guarantee inmate safety by protecting them from attacks by other prisoners… a constitutional claim does not lie every time one inmate attacks another." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018) (cleaned up). To plead a plausible failure-to-protect claim under the Eighth Amendment, there must be facts suggesting: (1) there was a substantial risk of harm to the inmate; and (2) a Defendant subjectively knew of, but deliberately disregarded, that risk. *Id.*

Russell alleges that he was jumped—presumably, by fellow inmates—but he does not explain any of the circumstances of the attack. There are also no facts indicating that that any Defendant was preemptively aware of the attack. Russell's lone allegation that Musselwhite refused him "safety and protection" by subsequently failing to investigate the attack does state an actionable claim.[4] Thus, Russell fails to state a plausible failure-to-protect claim against any Defendant.

### F.    Supervisory Corrective Inaction

Russell alleges that he sent a letter to Payne, but ADC staff continue to violate inmates' rights. (Doc. 2 at 4). The Court construes this as a supervisory-liability claim.

"Supervisors can incur liability for [constitutional violations] in two ways: they can be liable for their personal involvement in a constitutional violation, or when their

---

[4] Russell does not have a statutory or constitutional right to an internal investigation of his complaints. *See Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002) ("[Plaintiff] does not cite, nor have we found, any federal or state court decision, statute, regulation or other source of law that gives [her] an entitlement to an internal investigation by the Sheriff's Office of her complaints of police brutality."); *see also Stringer v. Doe*, 503 F. App'x. 888, 890–91 (11th Cir. 2013) (unpublished) (holding no substantive due process right to an internal investigation by the sheriff's department or law enforcement); *Johnson v. Adams*, No. 5:12-CV-00131-DPM-JTR, 2012 WL 2389930, *2 (E.D. Ark. May 30, 2012), *report and recommendation adopted*, No. 5:12-CV-00131-DPM-JTR, 2012 WL 2400617 (E.D. Ark. June 21, 2012) (holding prisoner "does not have a federal statutory or constitutional right to have prison officials conduct an internal investigation of the February 16 attack").

corrective inaction amounts to deliberate indifference to or tacit authorization of the violative practices." *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993) (cleaned up). For a "corrective inaction" claim, the supervisor must have "received notice of a pattern of unconstitutional acts committed by a subordinate." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015).

Russell does not explain when he sent the letter to Payne or whether Payne responded. Additionally, while Russell says he sent a letter about "these situations," Russell does not explain the specific conditions or incidents he mentioned in the letter. Thus, Russell fails to state a plausible corrective-inaction claim against Payne.

### G.    No Personal Action by Pierce

Russell also fails to state a claim against Pierce. In § 1983 actions, government officials are only liable for their "*own* individual actions." *Iqbal*, 556 U.S. at 676 (emphasis added). But Russell does not allege that Pierce, the Deputy Warden for Security, was directly involved in any constitutional violation. Instead, Russell asserts that the ADC is generally unsafe. (Doc. 2 at 4). Without any facts regarding actions taken directly by Pierce, Russell fails to state any plausible claim against Pierce.

### H.    Official-Capacity Claims

Russell sues Defendants in their personal and official capacities. (Doc. 2 at 2). "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Russell's official-capacity claims against Defendants, then, are the equivalent of claims against the state of Arkansas, and Russell's monetary damages

claims are barred by the Eleventh Amendment. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

The Eleventh Amendment does not, however, bar prospective injunctive relief. *Ex Parte Young*, 209 U.S. 123, 149–50 (1908). To plead a claim against Defendants in their official capacities, Russell must allege facts showing that the purported constitutional violations were the result of an official ADC policy, an unofficial custom, or a failure to train. *Nix v. Norman*, 879 F.2d 429, 433 (8th Cir. 1989); *Hood v. Norris*, 189 F. App'x 580 (8th Cir. 2006). Even liberally construing his Complaint, Russell makes no such allegations; therefore, he fails to state an official-capacity claim against Defendants.

I.   **Request for an "Emergency Temporary Restraining Order"**

Russell requests an Emergency Temporary Restraining Order allowing his release to an ACC reentry program. (Doc. 2 at 6). To the extent Russell seeks his speedier release from ADC custody, he may not pursue that relief in this § 1983 action. *Heck v. Humphrey*, 512 U.S. 477, 481 (1994) (citing *Preiser v. Rodriguez*, 411 U.S. 475 (1973)) ("habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983."). Moreover, any request for a temporary restraining order or preliminary injunction must be brought "in a separate pleading accompanied by a separate brief." Local Rule 7.2(e).

## IV. CONCLUSION

IT IS THEREFORE RECOMMENDED THAT:

1. Russell's Complaint, (Doc. 2), be DISMISSED without prejudice for failure to state a claim upon which relief may be granted.

2. The Court RECOMMEND that the dismissal count as a "strike" for the purposes of the Prison Litigation Reform Act. 28 U.S.C. § 1915(g).

3. The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommendation would not be taken in good faith.

DATED this 12th day of December, 2025.

*Benecia Moore*
UNITED STATES MAGISTRATE JUDGE